Filed 11/02/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMANDA QUILES, | |
| Plaintiff and Respondent, | G054353 |
| v. | (Super. Ct. No. 30-2010-00425532) |
| ARTHUR J. PARENT, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Law Office of Stephen A. Madoni and Stephen A. Madoni for Defendant and Appellant.

Bryan Schwartz Law, Bryan J. Schwartz, Logan Starr; Levene, Neale, Bender, Yoo & Brill and Daniel H. Reiss for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

In this latest chapter in what originated as a wage and hour class action, defendant Arthur J. Parent, Jr. (Parent) appeals from the amended judgment entered in favor of plaintiff Amanda Quiles on her individual claim for wrongful employment termination in violation of the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.). (All further statutory references are to title 29 of the United States Code unless otherwise specified.) In addition to the damages awarded by the jury, the amended judgment awarded Quiles $689,310.04 in attorney fees and $50,591.69 in costs of litigation.

Parent challenges the attorney fees and costs awards of the amended judgment only, arguing the trial court erred by awarding costs that were not statutorily authorized and by awarding attorney fees and costs that were jointly incurred by Quiles with her coplaintiffs for whom litigation remains pending. He also argues the trial court otherwise abused its discretion by awarding attorney fees and costs that were unrelated and unnecessary to Quiles's successful FLSA claim.

We affirm. We hold, in this case of first impression, that federal law applies to the determination of what type of costs are recoverable by a prevailing party in an FLSA action filed in state court. Section 216(b) provides that any employer who wrongfully terminates the employment of an employee in retaliation for filing an FLSA action shall be liable for legal or equitable relief and shall pay the employee's reasonable attorney fees and costs of the action. Federal courts have construed section 216(b) to authorize awarding a prevailing employee a broad measure of costs, which include copying, postage, and mediation expenses.

We reject Parent's argument that the trial court erred by awarding Quiles mediation costs because the parties had contractually agreed to mediate the matter and divide the costs between them. The record shows that the parties agreed to each pay the mediation services provider half the costs of mediation, but Parent did not go through

with any agreement to mediate, having failed to personally appear at the mediation or otherwise be available to participate in the mediation. Parent forfeited his argument that the trial court awarded expert witness fees that were unauthorized by the FLSA. He failed to raise that argument in the trial court which resulted in the issue not having been fully briefed and in depriving the trial court the opportunity to make that determination in the first instance.

We also reject Parent's claim that the trial court erred by awarding Quiles costs she jointly incurred with other plaintiffs who continue to litigate their claims. The trial court painstakingly reviewed the lengthy record regarding Quiles's requests for attorney fees and costs and awarded her what the court determined she reasonably incurred on her own behalf and in relation to her successful claim. Contrary to Parent's argument, the trial court did not err by awarding Quiles attorney fees and costs she incurred in connection with the trial as to the joint employer issue. Having proven Parent's status as her joint employer enabled Quiles to avail herself of the opportunity to pursue damages, penalties, attorney fees and costs against Parent for violating the FLSA by wrongfully terminating Quiles's employment.


BACKGROUND

In November 2010, Quiles, along with other individuals, filed a proposed class action against, inter alia, Koji's Japan Incorporated (Koji's) and Parent (collectively defendants), asserting several state and federal wage and hour claims and violation of California's unfair competition law. Plaintiffs amended their complaint several times to add, among other things, Quiles's individual wrongful employment termination claim in violation of the FLSA.

In early 2015, the trial court presided over a bench trial to determine joint employer and alter ego theories of liability. At the beginning of the trial, defendants declared bankruptcy. Parent was fined over $50,000 for making a frivolous bankruptcy

3

filing. At the conclusion of the bench trial, the trial court found Parent qualified as a joint employer under the FLSA.[1]

A year later, the trial court conducted a jury trial of Quiles's individual FLSA claim against defendants for wrongful employment termination. According to the parties' joint statement of the case prepared for this phase of trial, "Quiles claimed that she was wrongfully terminated from her employment when Koji's became aware that she was named as the representative claimant in this class action." Quiles sought damages for past loss of earnings and emotional distress. Defendants argued Quiles's employment was terminated for "legitimate reasons, based on her disciplinary record alone."

The jury found in favor of Quiles on her wrongful employment termination claim, finding on the special verdict form: (1) Quiles's lawsuit was a substantial motivating reason for her discharge; (2) defendants' conduct was a substantial factor in causing harm to Quiles; and (3) defendants failed to prove that they would have made the same decision based upon a legitimate, nonretaliatory reason. The jury awarded Quiles economic damages for loss of past earnings in the amount of $3,000; non-economic damages, including emotional distress damages, in the amount of $27,500; and punitive damages in the amount of $350,000.

Quiles filed a request to withdraw as a class representative and requested dismissal of her individual claims other than her wrongful employment termination claim that had been tried. The trial court granted Quiles's request and Quiles disclaimed any right to future recovery as a class member.

In April 2016, judgment was entered in Quiles's favor and against defendants for the damages awarded by the jury, plus $3,000 in liquidated damages

---

[1] Quiles, along with other plaintiffs, challenged certain of the court's findings at the bench trial through a notice of appeal which we construed as a petition for writ of mandate. (*Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 979.) During the pendency of those proceedings, Quiles was dismissed as a party to them. (*Id.* at p. 975, fn. 3.) Our decision in *Turman* is not relevant to the issues presented in this case.

awarded by the trial court (§ 216(b)), for a total damages award of $383,500.[2] Blank lines were included in the judgment for attorney fees and costs of litigation awards.

Defendants filed a motion for a new trial solely challenging the award of punitive damages. The trial court conditionally granted the new trial motion, subject to Quiles consenting to a reduction of the punitive damages award to $175,000. (Code Civ. Proc., § 662.5, subd. (a)(2).) Quiles accepted the proposed reduction, bringing the total damages award down to $208,500.

In May 2016, Quiles filed a memorandum of costs and a supplemental memorandum of additional costs, which, together, sought a total costs award of $70,587.81. In June 2016, Quiles filed a motion seeking an attorney fees award in the total amount of $1,057,295.59 for the prosecution of her individual FLSA claim. The trial court summarized Quiles's attorney fees request as comprised of the following: (1) for time spent up to May 22, 2013, $21,384.50 (a 90 percent discount off the total of $213,845 for 595.2 hours); (2) for time spent after May 22, 2013, $442,256.25 (a 50 percent discount off the total of $884,512.50 for 2,245.5 hours); (3) $419,217.5 for 1,009.4 hours for time spent solely on the wrongful employment termination action; (4) $25,600 for 51.2 hours of time spent by attorney William Crosby; (5) $170,395 for 270.6 hours of time spent by attorney Larry Organ; (6) less $2,600 (a reduction of 5.2 hours of Crosby's time); (7) less $54,192.67 (a five percent discount off the subtotal of items (1) through (6) above); and (8) $30,105 for 76.1 hours for time spent to prepare the replies to "these motions" (presumably referring to Quiles's motion for attorney fees and Parent's motion to tax costs). Defendants filed a motion to strike or tax costs and an opposition to the motion for attorney fees.

Following a hearing on attorney fees and costs, the trial court awarded Quiles $689,310.04 in attorney fees by way of a detailed written ruling. In a separate

_____

[2] Parent does not challenge the jury's verdict finding him liable for wrongful employment termination in violation of FLSA or the award of damages against him.

5

order, the court awarded $50,591.69 in costs to Quiles. An amended judgment was entered which reflected the updated damage award (total of $208,500), the attorney fee award ($689,310.04), and the costs award ($50,591.69).

Parent alone filed a notice of appeal.[3]

DISCUSSION

I.

THE TRIAL COURT CORRECTLY DETERMINED THAT FEDERAL LAW APPLIED TO DETERMINE WHAT TYPES OF COSTS QUILES MAY RECOVER FOR PREVAILING ON HER FLSA CLAIM.

The FLSA provides for an award of prevailing party attorney fees and costs to an employee who proves retaliation under its provisions: "Any employer who violates the provisions of section 15(a)(3) of this Act [29 USCS § 215(a)(3)][4] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) . . . . An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

---

[3] During the pendency of this appeal, Parent filed a petition for a writ of supersedeas staying enforcement of the judgment as to the amount that remained owed on the judgment (attorney fees and costs only). (*Quiles v. Parent* (2017) 10 Cal.App.5th 130, 148 (*Quiles I*).) We granted the petition without prejudice to the trial court exercising its discretion to impose a bond requirement on Parent. (*Ibid.*) Thereafter, the trial court so exercised its discretion and has required Parent to post a bond under Code of Civil Procedure section 917.9. Parent has filed an appeal from that order.

[4] Quiles's wrongful employment termination claim was based on a violation of section 215(a)(3), which provides it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act."

6

reasonable attorney's fee to be paid by the defendant, and costs of the action."
(§ 216(b).)

As we stated in *Quiles I, supra,* 10 Cal.App.5th at pages 145-146, "State procedural rules apply to federal causes of action in state court, unless the federal right is defeated thereby. (*Felder v. Casey* (1988) 487 U.S. 131, 138.) Generally speaking, the use of California postjudgment procedures to recover attorney fees and costs authorized by a federal statute does not appear to be inconsistent with federal law. (See *Gill v. Hughes* (1991) 227 Cal.App.3d 1299, 1310 [assessing award of attorney fees under 42 U.S.C. § 1988 in state court postjudgment proceedings].)"[5]

The parties disagree as to whether the trial court correctly concluded that federal law applied to determine not only Quiles's entitlement to costs, but also the types of costs she might recover. Parent argues the issue of what type of costs are recoverable on an FLSA claim is a determination of a procedural nature to which state law would apply. Quiles argues that determination is of a substantive nature to which federal law applies.

Neither the parties nor the trial court cite legal authority addressing the applicability of federal law to determine the recoverability of particular types of costs in an FLSA case litigated in state court. In our research, we have found none. There is, however, a line of cases addressing the same question in cases brought under the Federal Employers Liability Act (45 U.S.C. § 51 et seq.) (FELA) filed in California state courts, in which courts have held that the question of the availability of certain types of costs is a matter of substantive law requiring the application of federal law.

---

[5] We further stated: "[P]ostjudgment proceedings authorized by the California Rules of Court and [Code of Civil Procedure] section 1021 et seq. provide a mechanism to allow Quiles to recover the attorney fees and costs authorized by 29 United States Code section 216(b). The trial court was rightly operating under California state procedural rules in entertaining Quiles's request for attorney fees and costs." (*Quiles I, supra,* 10 Cal.App.5th at p. 146.)

In *Kinsey v. Union Pacific Railroad Co.* (2009) 178 Cal.App.4th 201, 203 (*Kinsey*), the jury returned a verdict against the plaintiff in the FELA action he filed in state court. Before trial, the plaintiff had rejected the defendant's offer to compromise under Code of Civil Procedure section 998. (*Kinsey, supra,* 178 Cal.App.4th at p. 203.) After the judgment was entered, the trial court awarded defendant its costs, including expert witness fees; the plaintiff appealed. (*Ibid.*) The appellate court reversed the expert witness fees portion of the costs award, holding "the availability of expert witness fees in a FELA action filed in state court is controlled by federal law. . . . [W]e conclude federal law does not authorize an award of expert witness fees to a defendant who has made a rejected offer of settlement and then obtains a defense verdict." (*Id.* at p. 204.)

The appellate court's reasoning included the following: "'FELA is a broad remedial statute based on fault . . . and is intended by Congress to protect railroad employees by doing away with certain common law tort defenses. [Citations.]' [Citation.] . . . [¶] A FELA action may be brought in state or federal court. [Citations.] When a FELA action is instituted in state court, state law governs the resolution of procedural issues unless application of state law results in the denial of a right granted by Congress. Federal law governs the resolution of substantive issues. [Citations.] [¶] Applying federal law to the resolution of substantive issues in FELA cases pending in state courts furthers the statute's goal of '"creat[ing] uniformity throughout the Union"' with respect to railroads' financial responsibility for injuries to their employees.'" (*Kinsey, supra,* 178 Cal.App.4th at pp. 204-205.)

The appellate court continued: "In *Miller* [*v. Union Pacific Railroad Co.* (2007)] 147 Cal.App.4th 451, we held that the availability of expert witness fees in a FELA action filed in state court is a 'substantive' issue controlled by federal law. [¶] In so doing, we noted that the United States Supreme Court has characterized a litigant's ability to recover prejudgment interest in FELA cases as a 'substantive' issue governed by federal law, because it '"is normally designed to make the plaintiff whole and is part

8

of the actual damages sought to be recovered,"' '"may constitute a significant portion of an FELA plaintiff's total recovery,"' and may also '"constitute[] too substantial a part of a defendant's potential liability under the FELA"' to be considered merely procedural. [Citations.] [¶] Following the Supreme Court's holding that federal law controls the availability of prejudgment interest in a state-filed FELA case, our own state high court in *Lund* [*v. San Joaquin Valley Railroad* (2003)] 31 Cal.4th 1 likewise concluded that prejudgment interest is not available in a California FELA case, notwithstanding contrary state law. It observed that the goal of achieving national uniformity in personal injury actions by railroad employees against their employers 'would be frustrated if FELA plaintiffs could recover prejudgment interest simply by filing their actions in state court rather than in federal court, where such recovery is precluded. Even if prejudgment interest could be considered procedural rather than substantive, "state procedure must give way if it impedes the uniform application of the federal statute essential to effectuate its purpose, even though the procedure would apply to similar actions arising under state law." [Citation.]' [Citation.] [¶] In *Miller* [*v. Union Pacific Railroad Co.*]*, supra,* 147 Cal.App.4th 451, this court applied the same reasoning to the availability of expert witness fees as costs in a FELA case brought in state court." (*Kinsey, supra,* 178 Cal.App.4th at p. 205.)

The FLSA is sufficiently analogous to the FELA to support the principle that federal law applies in determining the recoverability of certain types of costs in an FLSA action brought in state court. Like FELA claims, FLSA claims may be filed in either state or federal court. (§ 216(b).) The FLSA too has "'broad remedial purposes.'" (*Boucher v. Shaw* (9th Cir. 2009) 572 F.3d 1087, 1090.) As *Kinsey* explained in the context of FELA cases, cost awards in FLSA cases can comprise a large amount of a litigant's overall recovery; the amount of attorney fees and litigation costs awarded Quiles was double the amount of her damages award. To preclude a prevailing plaintiff from recovering the same costs incurred in litigating an FLSA claim in state court that he

9

or she would have recovered in federal court would impede the uniform application of the FLSA without any indication from Congress it intended such a disparity.

We therefore conclude federal law must be applied in determining the recoverability of certain types of costs in an FLSA action.[6]

II.

THE TRIAL COURT CORRECTLY AWARDED QUILES COSTS FOR COPYING, POSTAGE, AND MEDIATION EXPENSES.

Section 216(b) does not describe, much less identify, the types of costs that may be awarded in favor of an employee who successfully proves a wrongful employment termination claim in violation of the FLSA.  Federal case law has interpreted section 216(b) as authorizing a broad measure of costs, not limited by statutory lists of generally allowable costs in such cases, including "reasonable out-of-pocket expenses"

---

[6]  In his appellate opening brief, Parent argues that in *Kinsey, supra,* 178 Cal.App.4th at page 208, the appellate court "also remanded with instructions to allow for costs of ordinary witness fees pursuant to Code of Civil Procedure § 1033.5[.]  [*Id.* at 208.]  Thus the court in *Kinsey* specifically recognized that determining costs for a federal claim was governed by the state procedural statute ([Code of Civil Procedure s]ection 1033.54) for determining allowable costs, while determining substantive rights related to settlement of federal claims was governed by federal statutes."  We believe Parent reads too much into the cited portion of *Kinsey*, which states:  "[D]efendant asks on appeal that we remand the matter to the trial court, so that it may seek to recover as costs 'ordinary witness fees for its experts who testified at trial.'  (See Code Civ. Proc., § 1033.5; Evid. Code, § 733; Gov. Code, § 68093.)  Plaintiff does not dispute that defendant is entitled to seek ordinary witness fees as costs for those of its experts who testified at trial.  We remand the matter to the trial court for that limited purpose."  (*Kinsey, supra,* 178 Cal.App.4th at p. 208.)  The appellate court did not determine or analyze the extent to which ordinary witness fees would be recoverable by the defendant, or whether there was any difference between state and federal law on that issue, but merely remanded the matter to the trial court to make that determination in the first instance.  Construing this passage in *Kinsey* as requiring a holding that state law applies to the determination of what types of costs are available to a successful FLSA litigant would directly contradict the court's analysis and holding in the case—that federal law applies to determine whether expert witness fees might be recoverable by a prevailing party in a FELA action.

10

beyond those normally allowed under the federal rules. (*Smith v. Diffee Ford-Lincoln-Mercury, Inc.* (10th Cir. 2002) 298 F.3d 955, 968-969.)

In his opening brief, Parent argues the trial court erred by awarding Quiles costs for copying, postage, and mediation expenses because none of those costs are available under Code of Civil Procedure section 1033.5. As discussed *ante*, federal law dictates what costs Quiles may recover. Parent does not analyze his challenges to the trial court's costs award under federal law. We nevertheless analyze each of Parent's challenges by applying federal law and conclude none has merit.

Federal district courts have routinely allowed the reimbursement to parties who prevailed on FLSA claims of their photocopying, postage, and mediation expenses. (See *Lopez v. STS Consulting Servs. LLC* (E.D.Tex. Mar. 12, 2018, No. 6:16-CV-00246-RWS) 2018 U.S.Dist. Lexis 39736 [expenses for copying, mediation, and postage recoverable in FLSA action]; *Mumford v. Eclectic Inst., Inc.* (D.Or. Apr. 29, 2016, No. 3:15-cv-00375-AC) 2016 U.S.Dist. Lexis 57940 [awarding prevailing party in FLSA claim cost of copies and postage]; *Rutti v. Lojack Corp.* (C.D.Cal. July 31, 2012, No. SACV 06-350) 2012 U.S.Dist. Lexis 107677 ["Reasonable litigation expenses are ordinarily included in an award of attorneys' fees pursuant to the FLSA. [Citation.] Expenses such as reimbursement for . . . photocopying, . . . postage, courier service, mediation, . . . are typically recoverable"]; *Rouse v. Target Corp.* (S.D. Tex. 2016) 181 F.Supp.3d 379, 392 [in addition to taxable costs listed under 28 U.S.C. § 1920, "costs for . . . photocopying, . . . postage, courier service, mediation*, . . .* are also recoverable under the FLSA as part of an attorney's fee award"]; but see *Moore v. Deer Valley Trucking, Inc.* (D.Idaho Sept. 12, 2016, No. 4:13-cv-00046) 2016 U.S.Dist. Lexis 124654 [denying request for postage and photocopy fees in FLSA case as "not statutorily authorized"].)

Well-established federal authority therefore supports the trial court's award of copying, postage, and mediation costs to Quiles.

11

As to the award of mediation fees, Parent further argues that such costs should not have been awarded to Quiles because the parties had contractually agreed to mediate and to split the mediator's fees in doing so. He cites *Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 25 in which a prevailing party was unable to recover mediation costs based on the parties' reference agreement submitting a dispute to binding resolution pursuant to Code of Civil Procedure section 638. *Carr Business Enterprises, Inc.* has no application here because our record shows that, notwithstanding the parties' agreement to mediate, Parent refused to appear personally or otherwise participate in the mediation.

Specifically, the record contains a copy of the relevant JAMS Fee Agreement & Cancelation Policy, setting forth the details of the mediation and each party's agreement to pay JAMS half the mediation fee 14 days in advance of the scheduled mediation. Quiles's attorney, Bryan J. Schwartz, filed a declaration in support of Quiles's motion for attorney fees, in which he explained the circumstances of the parties' mediation as follows: "My firm attempted in good faith t[o] settle the wrongful termination claims with Defendants shortly after adding the wrongful termination claims to the complaint. In February 2011, I flew down to Orange County to meet with Defendants' counsel Steve Madoni about discussing settlement of the case, at his invitation, and to attend the initial case management conference in person, though I would have attended by CourtCall. Mr. Madoni did not show up at our scheduled meeting, nor did he appear for the case management conference, resulting in court sanctions. [Citation.] Later, the Parties each paid half of the fees for a mediation as to Plaintiff's wrongful termination claims with the Honorable Luis A. Cardenas (Ret.), which was set for November 25, 2015 in Orange County. The mediation was confirmed by Defendants through Mr. Madoni on October 28, 2015, after the parties began discussing a mediation some time earlier. However, after Ms. Quiles and I traveled to Orange County the Wednesday prior to Thanksgiving, Defendant Parent did not even

12

show up to the event. Of particular significance, and without disclosing confidential settlement demands and offers, after Defendants' acceptable initial offer at the mediation, Judge Cardenas informed that Defendants' counsel had no further room to negotiate, that Defendant Parent was unavailable (or unwilling) to speak with Judge Cardenas even via telephone, and that Defendants' counsel would be leaving the mediation by 10:30 a.m. Needless to say, no settlement was reached. Attached hereto as Exhibit C is a true and correct copy of the email response from Judge Cardenas when I emailed him to request a partial refund from JAMS based upon the extraordinarily fruitless event."

Exhibit C to Schwartz's declaration is an e-mail from Cardenas to Schwartz which states in part: "I will talk to the office manager about the JAMS fees . . . but after twenty years of working at JAMS . . . it probably will be the corporate opinion that the lack of progress was due to the lack of participation of a party and not to the forum. My suggestion is you seek reimbursement for your share of the mediation expenses as a 'cost' when you submit your request for fees and costs after the trial is concluded. [¶] Your professionalism and courtesy under very difficult circumstances are greatly appreciated. It would be a privilege to work with you in the future . . . hopefully with better results."

Under these circumstances, we cannot conclude the trial court erred by awarding Quiles her mediation costs pursuant to the broad measure of costs available under section 216(b).

### III.
### PARENT HAS FORFEITED HIS ARGUMENT THE EXPERT FEES AWARD WAS NOT STATUTORILY AUTHORIZED.

In his opening brief, Parent argues "the trial court awarded [Quiles] $6,000 in expert fees over objection of [Parent]" on the ground such costs are not recoverable under the FLSA. He cites only page 13040 of the clerk's transcript, which is the portion of Quiles's memorandum of costs detailing the expert witness fees she sought to recover.

13

Quiles argues in her respondent's brief that Parent has forfeited his argument that such costs are not recoverable under the FLSA because he did not raise that issue in the trial court. In his reply brief, citing page 13218 of the clerk's transcript, Parent argues he "did object specifically to the award of expert witness fees." His reference to expert witness fees on page 13218 of the clerk's transcript was in relation to his argument that those fees, among many others (court fees, postage, transcripts, etc.), were jointly incurred in the course of the bench trial of the alter ego and joint employer issues and that some, if not all, of those costs were not reasonably incurred in connection with Quiles's successful FLSA wrongful employment termination claim.[7] Parent does not cite where in the record he objected in the trial court to an award of expert witness fees as not statutorily authorized.

"Failure to raise specific challenges in the trial court forfeits the claim on appeal. ""'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]'" [Citation.] "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . .""" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

---

[7] We address and reject Parent's arguments that the trial court improperly awarded Quiles attorney fees and costs incurred during the trial on the joint employer issue in discussion parts IV. and V. *post*.

We view the record as a whole, and we consider the extensive record prepared on the issues raised regarding Quiles's attorney fees and costs, including the trial court's lengthy rulings on these issues. We also note that the parties did not fully brief the expert witness fee issue raised by Parent on appeal. Based on the facts, we must conclude that Parent has forfeited his argument expert witness fees were not statutorily authorized by failing to raise it below.

IV.

THE RECORD DOES NOT SHOW THE TRIAL COURT AWARDED QUILES ATTORNEY FEES OR COSTS OTHER THAN THOSE INCURRED BY HER IN RELATION TO THE SUCCESSFUL LITIGATION OF HER WRONGFUL EMPLOYMENT TERMINATION CLAIM.

In his appellate opening brief, Parent argues the trial court erred by awarding attorney fees and costs in the amended judgment to Quiles "that were not incurred solely for the benefit of [Quiles], but rather, were incurred for the joint benefit of all the named plaintiffs for a matter still pending." Citing *Fennessy v. DeLeuw-Cather Corp.* (1990) 218 Cal.App.3d 1192 (*Fennessy*), Parent argues that although Quiles dismissed all of her claims other than her successful retaliation claim, she was only one of eight plaintiffs and "the remaining seven jointly represented plaintiffs' case is still pending." Therefore, Parent's argument continues, "although the lower court significantly reduced the fee request due to excessive and improper billing request, based on *Fennessy* . . . the court should not have awarded **any** of these jointly incurred costs or fees." In his appellate reply brief, Parent reiterated he "does not question the amount of jointly incurred costs and fees awarded, but contends instead that under *Fennessy* . . . the court does not have the discretion to award any jointly incurred costs or fees while the matter is still pending."

California law provides: "[A]ll costs awarded to a prevailing party must be incurred by that party, must be 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation,' and must be reasonable in amount. ([Code Civ. Proc.,] § 1033.5, subd. (c)(1)-(3).) These limitations apply whether

15

the costs are awarded as a matter of right or in the court's discretion. . . . [¶] "'When a prevailing party has incurred costs jointly with one or more other parties who are not prevailing parties for purposes of an award of costs, the judge must apportion the costs between the parties [based on the reason the costs were incurred and whether they were reasonably necessary to the conduct of the litigation by the jointly represented party who prevailed].'"'" (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 743-744 (*Charton*), final brackets in original.)

Although not cited or analyzed by Parent, general federal standards for determining prevailing party attorney fees and cost awards similarly require courts to exercise discretion and consider what attorney fees and costs were reasonably incurred in light of the prevailing party's degree of success in the litigation. In the trial court's order awarding attorney fees, the court correctly cited *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433 (*Hensley*) in summarizing the "general law" applicable to the determination of the attorney fees award.

In *Hensley, supra,* 461 U.S. 424, the United States Supreme Court explained that "[t]he standards set forth in [its] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" (*Id.* at p. 433, fn. 7.) It therefore logically follows that the standards articulated in *Hensley* apply to FLSA actions. The United States Supreme Court in *Hensley, supra,* 461 U.S. 424 summarized these standards as including the following: "A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation.] This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.' [¶] . . . [¶] The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' [Citation.] Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the

16

prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." (*Id.* at pp. 433-434, fn. omitted.) The Supreme Court explained that "[t]here is no precise rule or formula" for calculating an award that reflects the degree of success obtained by a litigant and the trial court "necessarily has discretion in making this equitable judgment." (*Id.* at pp. 436-437.)

Parent argues the trial court erred by including in its allocation of the amount of attorney fees and costs awarded to Quiles fees and costs that had been jointly incurred by Quiles and other plaintiffs in the litigation leading up to the trial of her wrongful employment termination claim because the litigation remains pending as to those other plaintiffs. Even assuming the legal standards applied in *Fennessy, supra,* 218 Cal.App.3d 1192 govern here, they do not support Parent's argument.

In *Fennessy*, *supra,* 218 Cal.App.3d at page 1194, six jointly represented defendants moved for summary judgment, but only one of them prevailed and obtained a judgment in his favor. That single prevailing defendant then sought to recover *all* costs incurred by the six jointly represented defendants. (*Ibid.*) The trial court denied the plaintiff's motion to tax costs. (*Ibid.*) The appellate court reversed, explaining the prevailing defendant may recover only those costs actually incurred by that defendant or on his behalf in defending the case, holding: "[W]here a prevailing party incurs costs jointly with one or more parties who remain in the litigation, *during the pendency of the litigation* that party may recover only costs actually incurred by a party or in its behalf in prosecuting or defending a case." (*Id.* at p. 1196.) The appellate court concluded the trial court erred in awarding the prevailing defendant "the total costs claimed without ascertaining whether he in fact incurred such costs" and remanded to provide the prevailing defendant the opportunity "to prove those costs actually incurred by him in defending against this litigation." (*Id.* at p. 1197.)

In *Charton, supra,* 247 Cal.App.4th at pages 735 to 736, unlike in *Fennessy* the litigation had concluded as to all parties. One defendant had prevailed, two

17

defendants had not prevailed in defending claims against them, and claims against a fourth defendant, inexplicably, were never tried. The trial court awarded the single prevailing party defendant 25 percent of "the total amount of recoverable costs" in the case. (*Id.* at p. 737.) The plaintiffs challenged the cost award, arguing that the prevailing defendant did not incur some or all of the costs for her own benefit and they were not reasonably necessary to the conduct of her defense. A panel of this court "reversed as to the trial court's across-the-board reduction in the amount of costs based on the number of jointly represented defendants" and remanded for the trial court to determine which specific costs the prevailing party incurred and whether they were reasonably necessary to her defense. (*Id.* at pp. 743, 745.)

The *Charton* court explained that *Fennessy* was factually distinguishable because in *Fennessy*, the action remained pending against a majority of the jointly represented defendants while in *Charton*, the litigation had concluded. The court noted: "This distinction, however, affects only how the court applies the underlying principle to particular cost items; it does not change the underlying principle. A prevailing party who is represented by the same counsel as a nonprevailing party may only recover those costs the prevailing party incurred and were reasonably necessary to the prevailing party's conduct of the litigation, not the other jointly represented parties' conduct of the litigation. [Citations.] *Whether to award costs that were incurred by both the prevailing party and the nonprevailing party, and were reasonably necessary to the conduct of the litigation for both the prevailing and nonprevailing party, is left to the trial court's sound discretion based on the totality of the circumstances.* [Citation.] [¶] In allocating costs between jointly represented parties, however, the trial court may not make an across-the-board reduction based on the number of jointly represented parties because such an allocation fails to consider the necessity or reasonableness of the costs as required by [Code of Civil Procedure] section 1033.5, subdivision (c). [Citation.] Instead, when allocating costs between jointly represented parties, the court must examine the reason

18

each cost was incurred, whether the cost was reasonably necessary to the conduct of the litigation on behalf of the prevailing party, and the reasonableness of the cost." (*Charton, supra,* 247 Cal.App.4th at pp. 744-745, italics added.)

The *Charton* court continued: "Here, the trial court made an across-the-board allocation based on the number of jointly represented defendants, awarding Harkey 25 percent of all costs defendants incurred because she was one of four jointly represented defendants. The court erred because it failed to apply the proper legal standards in making the allocation. [Citation.] We therefore reverse and remand for the trial court to allocate costs based on the foregoing principles." (*Charton, supra,* 247 Cal.App.4th at p. 745.)

Neither *Fennessy* nor *Charton* hold that the trial court must wait to allocate costs between jointly represented parties until litigation has ended as to all of them. Instead, the trial court may determine the cost award for a prevailing party by examining the reason each cost was incurred, whether the cost was reasonably necessary to incur in the litigation, and the reasonableness of the amount of the cost incurred. Our record shows the trial court understood the applicable legal standards.

The record shows the trial court was aware of the correct legal standard for allocating costs among multiple defendants in determining attorney fees and costs awards for Quiles, and nothing in the record suggests that correct standard was not applied by the court. Parent's argument that such awards must be reversed on the ground they included jointly incurred costs among some parties with litigation still pending is therefore without merit.

## V.
### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY AWARDING ATTORNEY FEES AND COSTS PARENT CONTENDS WERE UNRELATED AND UNNECESSARY TO QUILES'S FLSA CLAIM.

Parent argues the trial court abused its discretion by awarding Quiles attorney fees and costs related to the bench trial on the alter ego and joint employer issues

19

and by awarding her certified mail costs, none of which, he argues, were reasonable or necessary to the successful litigation of Quiles's wrongful employment termination claim. We conclude the court did not abuse its discretion.

## A.

*Attorney Fees and Costs Incurred in Proving Parent Was a Joint Employer.*

Parent argues that in *Citicorp Indus. Credit, Inc. v. Brock* (1987) 483 U.S. 27, the United States Supreme Court interpreted the phrase "any person" found in an FLSA provision prohibiting introducing goods into interstate commerce that were procured in violation of certain wage provisions, to include non-employers as well as employers. As section 215(a)(3) also establishes liability against "any person," and not just an employer for retaliatory employment terminations, Parent argues the bench trial at which he was proved to be a joint employer was unnecessary and unrelated to holding him liable for Quiles's wrongful employment termination claim. Parent argues: "In other words, [Parent] could have been held liable for wrongful termination of [Quiles] whether he had been a joint employer or not. The finding that he was a joint employer was unnecessary and unrelated to [Quiles]'s success on this claim." Therefore, Parent contends, costs and fees awarded in connection with the joint employer trial should not have been awarded.

Whether Parent might have been found liable for wrongful employment termination in violation of the FLSA as a person and not as a joint employer is not the relevant question. The relevant question is whether the determination that he was Quiles's joint employer was necessary and related to her successful FLSA claim—it was. Parent's argument suggests that a successful litigant may be awarded only those fees and costs that are related to the absolute minimum effort that might result in prevailing at trial. The legal standards do not direct trial courts to so approach requests for attorney fees and costs, but to determine what costs and fees were *reasonably* and necessarily related to the successful claim.

20

While Parent is correct that section 215(a)(3) prohibits "any person" from retaliating against an employee for filing an FLSA action, it is section 216(b) that creates the private right of action against any "employer" who violates section 215(a)(3) and sets forth the penalties for any such violation. By proving Parent was a joint employer with regard to Quiles, she was able to more directly (and efficiently) prove Parent's direct liability to her under section 216(b) once she proved her employment had been terminated because she filed an FLSA action.

B.

*Certified Mail Costs*

Without citing any legal authority, Parent argues there was no reasonable explanation for the trial court awarding Quiles her certified mail costs and thus abused its discretion in doing so. As discussed *ante*, federal courts have awarded postage and courier costs in FLSA matters. In her respondent's brief, Quiles states she "started sending correspondence via certified mail so that she would have proof of Parent's counsel's receipt of such correspondence, after Parent's counsel insisted he had not received correspondence that was sent to him on multiple occasions."

In his reply brief, Parent does not respond to Quiles's proffered explanation. Instead, he argues the trial court never made an express finding regarding the reasonable necessity of Quiles sending correspondence via certified mail. For the first time on appeal, and without any citation to the record, Parent then argues in his reply brief, "Further, the majority of the certified mail costs did not even relate to the Respondent's retaliation claim."[8] Parent has failed to demonstrate any abuse of discretion.

---

[8] In his reply brief, Parent states that a statutory notice under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.), which related exclusively to dismissed state claims, was properly sent by certified mail. Parent does not state in his appellate briefing whether the cost of that certified notice was included in the court's award of costs.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.